Lanre Kukoyi.
510 Washington Ave., Flr. 3
Carnegie, PA 15106
Voice (412) 725-7701
Facsimile (412) 502-5105
Mobile (412) 725-7701
kukoyi@kukoyilaw.com
*Counsel for Plaintiff*

_____

# IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| Helen Baynes, ) | |
|        Plaintiff, ) | |
| ) | |
| v. ) | |
| ) | Civil Action No. _____ |
| Santander Consumer USA, Del Mar ) | |
| Recovery Solutions, Doug Yuhouse , ) | **Complaint In Civil Action** |
| Michele Krempasky, Wilkinsburg ) | |
| Police Department, United Towing ) | **<u>JURY TRIAL DEMANDED</u>** |
| Service LLC a/k/a United Towing, ) | |
| Blair Johnson and Jay Johnson ) | |
|        Defendants. | |

## COMPLAINT

AND NOW COMES, Plaintiff Helen Baynes by and through her attorneys, Kukoyi Law Firm, LLC and Lanre Kukoyi, Esquire, avers as follows:

### Jurisdiction and Venue

1. This action arises in part under 42 U.S.C. § 1983, 15 U.S.C. § 1692 *et seq*, 13 Pa. C.S. § 9101 *et seq* and 73 P.S. § 270.1 *et seq*.

2. Jurisdiction over Plaintiff's claims is conferred on the Court by 28 U.S.C. §§1331, 1343 and 1367.

3. Venue in this District is proper under 28 U.S.C. §1391(b).

## The Parties

4. Plaintiff incorporates the preceding paragraphs by reference as if fully rewritten herein.

5. Plaintiff Helen Baynes (hereinafter "Plaintiff" or "Ms. Baynes") is a resident of Allegheny County, Pennsylvania, with an address of 1100 Graham Blvd., Pittsburgh, PA 15235.

6. Defendant Santander Consumer U.S.A (hereinafter "Santander") is a Dallas, TX based corporation, with its corporate headquarters and mailing address being P.O. Box 961245, Fort Worth, TX 7616-1245.

7. Defendant Del Mar Recovery Solutions (hereinafter "Del Mar") is headquartered in Carlsbad, California, with a business address of 1935 Camino Vida Roble, Carlsbad, CA 92008.

8. Defendant Doug Yuhouse (hereinafter "Yuhouse") was employed as an Officer of the Wilkinsburg Police Department as of the day of in question. He is sued both in his official and individual capacity.

9. Defendant Michele Krempasky (hereinafter "Krempasky") was a Lieutenant with the Wilkinsburg Police Department as of the day in question. She is sued both in her official and individual capacity.

10. Defendant Wilkinsburg Police Department (hereinafter "Wilkinsburg") is a department of the Borough of Wilkinsburg, a municipal entity in the County of Allegheny, Commonwealth of Pennsylvania.

11. Defendant United Towing Service, LLC a/k/a United Towing (hereinafter "United Towing") is a Pennsylvania Company, with its registered address on

2

the Pennsylvania Corporations Bureau website being 1555 Brinton Road, Pittsburgh PA 15221.

12. Defendant Blair Johnson (hereinafter "Blair") is a resident of Westmoreland County, Pennsylvania, with a home address of 6949 Spring Valley Lane, Export, PA 15632.

13. Defendant Jay Johnson (hereinafter "Jay") is a resident of Westmoreland County, Pennsylvania, with a home address of 3497 School Road, Murrysville, PA 15668.

14. Santander contracted with or hired Del Mar to repossess or to arrange for the repossessions of vehicles in connection with which it claimed a secured interest, and in turn Del Mar hired or contracted with United Towing to fulfil its contractual obligations to Santander with respect to Plaintiff's vehicle.

15. At all relevant times, Del Mar was an agent of Santander.

16. At all relevant times, United Towing, Blair Johnson and Jay Johnson were agents of Santander and Del Mar as they were acting within the scope of their employment or agency, and either Santander or Del Mar could have controlled how they performed their task.

17. At all relevant times, Blair Johnson and Jay Johnson were agents of United Towing as they were acting within the scope of their employment and United Towing could have controlled how they performed their task.

18. Self-help or non-judicial repossessions are inherently dangerous and involve the risk of violent confrontation. Therefore, Santander and Del Mar had a non-delegable duty to ensure that any non-judicial repossession undertaken on their

3

behalf is effectuated without a breach of the peace and are liable for any mis-

conduct in connection with the repossession

**Facts**

19. Plaintiff incorporates the preceding paragraphs by reference as if fully rewrit-

ten herein.

20. Plaintiff has a Loan Installment Contract (hereinafter "Contract") with Santan-

der, account number 3005580. This contract was entered into for the purpose

of purchasing her vehicle, a 2010 Hyundai Genesis.

21. Santander is a secured party as defined in 13 Pa. C.S. § 9102(a) for it retained a

security interest in the vehicle, as defined by 13 Pa. C.S. §1201(35).

22. Plaintiff is a consumer as defined by 13 Pa. C.S. § 1201(11) as her vehicle was

bought for a personal, family or household purpose.

23. The subject vehicle is a consumer good as defined by 13 Pa. C.S. § 9102(a) as

it was bought for and used for primarily personal, family or household purpos-

es.

24. On or about October 13, 2016, in order to bring her account current and cure a

delinquency on the account, Plaintiff E-signed an Extension Agreement

whereby she agreed to extend the payments on the Contract to make up for

missed payments. Her payment due date was the 17th of the month.

25. On or about October 15, 2016, Plaintiff made a payment of $594.81, which

was for October.

26. On or about November 22, 2016, Plaintiff and her husband, Blossie Long

(hereinafter "Long") were moving some household furniture. They were using

a pick-up truck for this and it was parked in their driveway, partially behind Plaintiff's car, which was in the garage, with the garage door opened.

27. Plaintiff's garage is an "attached garage, as is shares a common wall with the rest of Plaintiff's home and there is a door that leads directly from the garage into other parts of the home.

28. At approximately 1:05 pm that afternoon, a tow truck pulled into Plaintiff's driveway. There appeared to have been two men in the vehicle and one of them went into Plaintiff's garage and got into her car, while the second man backed the tow truck into Plaintiff's driveway. Plaintiff and her husband were inside the house during this time but it was caught on the home's security camera.

29. Plaintiff and her husband walked out of their house and noticed a man about to walk out of their garage. Plaintiff, who was ahead of her husband, began questioning the man and requested he leave their garage and property. The man did not respond but turned back into the garage.

30. Consequently, Ms. Baynes attempted to place herself between the man and the inside of her garage, and it was at this juncture he stated that he was there to pick up her car, before yelling to someone else in the garage "do you have it in neutral yet?"

31. Ms. Baynes strenuously objected to the repossession of the vehicle, but the stranger then pushed Ms. Baynes out of the way and began pulling at the back of her car with the intention to pull it out of the garage.

32. Long, who was behind his wife her, saw the man place his hand on his wife's chest/throat, so he grabbed a hold of the man in order to defend his wife and this degenerated into a shoving episode between the two men.

33. Long attempted to pull the man out of the garage, but the man held on to the side of the garage door so as to defeat the efforts to pull him out.

34. Subsequently, Long was able to get the man out to their driveway, away from the garage, but the man refused to leave their property, apparently insisting that he had a right to be there to repossess Plaintiff's car and attempted to go back to the garage over Long's objections.

35. Ms. Baynes went into the house to call Santander to find out what was going on as she was not aware that her car was slated for repossession.

36. As she was going into the house, she heard the man, later identified as Blair Johnson (hereinafter "Blair"), say that he was calling the police.

37. Plaintiff got through to a Santander representative, Dennis Ross (hereinafter "Ross") and explained that repossession agents were at her house. Ross, however, told her that her vehicle was being repossessed because she was about two or three months delinquent, even though she e-signed the Extension on October 13, 2016 plus the October 15 payment. Ross claimed that there was no record of either the extension or the payment.

38. Subsequently, Ross put her on hold for a while, then came back on the line and said that the repossession should be called off and that he would call the company to call off the repossession agents. This appears to confirm Plaintiff's belief that Santander had wrongly sent the repossession agents.

39. At a point during Ms. Baynes' phone call, Officer Yuhouse and Lt. Krempasky arrived in uniform and in separate squad cars. They both intervened between Long and Blair, with Long telling them that Blair was attempting to wrongfully take their car and that he assaulted Baynes. At a point, the two men can be seen on the video moving towards each other and Officer Yuhouse stepped in between them.

40. Subsequently Lt. Krempasky went into the house with Long, ostensibly to talk with Baynes. Long told Lt. Kremasky about the second repo agent in the garage and she went with him to see the man. Long observed that Lt. Krempasky and Jay greeted each other using their first names and that there appeared to be some familiarity between them. She then went over to the passenger side of the vehicle and talked with Jay. Long did not hear the details of their conversation.

41. At a point, a friend of Long's arrived and went into the garage to meet Long. About a minute afterwards, Officer Yuhouse also went into the garage.

42. After a short period, the two police officers went into the house and Lt. Krempasky called Baynes' name and asked her "did he (Blair) choke you?" Baynes, who was upstairs on the phone with Ross, responded "he hit me, he assaulted me." Apparently Ross heard her too and repeated "he hit you?" to Plaintiff and she responded "yes." Ross then put Plaintiff on hold and during this time, Krempasky asked her to come downstairs.

43. When Plaintiff went downstairs she saw the two police officers.  Lt. Krempasky asked her if she was okay, to which she responded "yes". Then subsequently, the two officers went into an adjoining to confer.

44. After the conference Lt. Krempasky left the house and Plaintiff attempted to explain the events to Officer Yuhouse, but he responded "my video shows that you assaulted him." This statement got Plaintiff scared, worried and concerned because the Police Officers were not present during any of her interactions with the repossession agents therefore could not have any video recording, so she felt this was an attempt to intimidate her so that she would permit the re-possession and she did feel intimidated.

45. Before Baynes could respond, Ross came back on the line to let Baynes know that the repossession would be called off. Baynes had Ross repeat what he told her to Officer Yuhouse. After Ross did so, Yuhouse responded to him "I don't know who you are. She called you and you could be anybody."

46. Simultaneously, Blair and his partner Jay Johnson (hereinafter "Jay"), who had been in Plaintiff's car, began pushing Plaintiff's car out of the garage, despite the fact that the pick-up truck blocking the way. As a result, plaintiff's car suffered some damage as it hit the pick-up truck and garage entrance.

47. When Baynes realized that the repo agents were attempting to push her car out of the garage, she appealed to the police officers to stop the repossession as she was confident it was not going to be much longer before the agents received the call to stop the repossession. The officers however told Baynes to let the repossession agents take the car and she could retrieve it subsequently, which Plaintiff viewed as confirmation of her suspicions that the Officers were aiding the repossession agents.

48. At a point on the video, Lt. Krempasky could even be seen attempting to give Long a business card Blair got from his car, giving him instructions to call the towing company.

49. It was at this point that Jay received a call directing him to call of off the re-possession. Baynes heard him yelling to the person he was on the phone with never to call him again.

50. After the incident, Santander, through Ross, sent another Extension to Plaintiff via email for her to e-sign because the Extension she e-signed in October could not be located.

51. That the events were witnessed by a friend to her husband and their neighbors has caused Plaintiff serious embarrassment, humiliation and distress.

52. Plaintiff felt physically intimidated by the presence, conduct and statements of the police officers.

53. Plaintiff began experiencing significant emotional distress because the incident triggered a prior traumatic incident in her life.

54. Plaintiff suffered actual damages, to wit dents to her car door/body.

## COUNT I
## 42 U.S.C. § 1983 – Against All Defendants

55. Plaintiff incorporates the preceding paragraphs by reference as if fully rewrit-ten herein.

56. Defendants at all times relevant to this action were acting under color of state law.

57. Defendants attempted to wrongfully deprive Plaintiff of her property without due process of law in violation of the Fourteenth Amendment to the Constitu-

tion of the United States and Plaintiff suffered property damage, emotional distress and mental suffering as a result.

58. Defendants made an unreasonable and warrantless seizure of Plaintiff property for the duration of the attempted wrongful repossession in violation of the Fourth Amendment to the Constitution of the United States as Plaintiff was not free to utilize her property as she deemed fit during this time, suffering property damage, emotional distress and mental anguish as a result.

WHEREFORE, Plaintiff asks for a judgment for compensatory damages in an amount to be determined at trial, plus reasonable attorney fees pursuant to 42 U.S.C. § 1988 against all Defendants jointly and severally.

### COUNT II
### Breach of the Peace During the Attempted Repossession by Defendants Blair Johnson and Jay Johnson

59. Plaintiff incorporates the preceding paragraphs by reference as if fully rewritten herein.

60. The conduct of Blair and Jay in the attempted repossession of Plaintiff's vehicle, despite her objections, entering her property and refusing to leave said property constituted trespass.

61. Any present right to possession of Plaintiff's vehicle that Blair and Jay may have had was extinguished when Plaintiff voiced her objections regarding the attempted repossession.

62. Blair's conduct in pushing plaintiff constitutes assault.

63. Plaintiff car was damaged by Blair and Jay.

64. The police had to intervene to keep the peace.

10

65. The assault, trespass, property damage and persistent attempt at repossession over Plaintiff's objection individually and collectively constitute a breach of the peace.

66. Blair and Jay acted in a manner that was reckless and malicious, and at the very least, their conduct demonstrated a reckless indifference to or disregard of Plaintiff's property rights.

WHEREFORE, Plaintiff requests for judgment against Defendants Blair Johnson and Jay Johnson, acting as agents of Santander, Del Mar and United Towing respectively, that they breached the peace during the wrongful attempted repossession, and hold Defendants Blair, Jay, Santander, Del Mar and United Towing jointly and severally liable for Plaintiff's actual damages and other compensatory damages allowable by law, including but not limited to punitive damages.

### COUNT III
### Violation of the Fair Debt Collection Practices Act (FDCPA) 15 U.S.C. § 1692 *et seq* by Defendants Del Mar, Uited Towing, Blair and Jay.

67. Plaintiff incorporates the preceding paragraphs by reference as if fully rewritten herein.

68. The FDCPA at 15 U.S.C. § 1692f(6) forbids a debt collector from "[t]aking or threatening to take any nonjudicial action to effect dispossession or disablement of property if … there is no present right to possession of the property claimed as collateral through an enforceable security interest." 15 U.S.C. § 1692f(6)(A).

69. § 1692a(6) of the FDCPA further provides that "[f]or purposes of section 1692f(6)", only, the term "debt collector" also "includes any person who uses

11

any instrumentality of interstate commerce or the mails in any business the principal purpose of which is the enforcement of security interests.

70. Therefore, United Towing and Del Mar are debt collectors, as they repossess vehicles using instrumentalities of interstate commerce, to wit a tow vehicle in the instant matter, in order to enforce security interest.

71. According to Pennsylvania state law, repossessions can only be conducted if there is no breach of the peace during the process of repossession. If a breach of the peace occurs, it extinguishes any present right to possession the repos-sessor may possess.

72. Because Blair and Jay, while acting as agents of Del Mar and United Towing, committed a breach of the peace and persisted in attempting to repossess Plain-tiff's vehicle, they violated Pennsylvania state law.

73. This violation of the state law is a violation of the FDCPA.

74. The FDCPA at 15 U.S.C. § 1692k permits an individual to recover actual dam-ages, statutory damages up to $1,000, costs plus reasonable attorney fees.

WHEREFORE, Plaintiff requests for judgment against Del Mar, United Towing, Blair Johnson and Jay Johnson, holding them jointly and severally liable, and awarding the maximum statutory damages, an actual damages as proven at trial, reasonable attor-ney fees and costs.

### COUNT IV
### Violation of the Uniform Commercial Code, 13 Pa. C.S. § 9101 *et seq*. by-Santander

75. Plaintiff incorporates the preceding paragraphs by reference as if fully rewrit-ten herein.

76. Plaintiff was a consumer debtor as defined by 13 Pa. C.S. §9102(a)

77. The subject vehicle is a consumer good as defined by 13 Pa. C.S. §9102(a).

78. Santander is a secured party as defined by 13 Pa. C.S. §9102(a).

79. According to the Uniform Commercial Code, 13 Pa. C.S. §9609(b)(2), a se-
    cured party may only proceed with a repossession if the repossession can occur
    without a breach of the peace.

80. Blair and Jay Johnson, acting as Santander's agents, breached the peace while
    attempting to repossess Plaintiff's car.

81. Therefore, this attempted repossession violated 13 Pa. C.S. § 9609(b)(2).

WHEREFORE Plaintiff requests for judgment against Defendant Santander as
provided for in 13 Pa. C.S. § 9625(c)(1) and statutory damages as provided for in 13 Pa.
C.S. § 9652(c)(2) of an amount not less than the credit service charge plus 10% of the
principal amount of the obligation.

### COUNT V
### Violation of the Pennsylvania Fair Credit Extension Uniformity Act
### (FCEUA)
### 73 P.S. § 2270.1 *et seq*. by Santander

82. Plaintiff incorporates the preceding paragraphs by reference as if fully rewrit-
    ten herein.

83. At all relevant times, Plaintiff was a consumer as defined in 73 P.S. § 2270.3.

84. At all relevant times, Defendant Santander was a Creditor as defined in 73 P.S.
    § 2270.3.

85. Prior to November 22, 2016, Santander had received payments from Plaintiff
    that were at least five (5) days late without attempting to repossess her vehicle.

86. Prior to November 22, 2016, Santander did not notify Plaintiff that it would no longer accept late payments from her but would exercise its right to repossession once a payment is late.

87. Additionally, according to Ross, the reason for the attempted repossession was because the records indicated that Plaintiff was a two to three months delinquent, which was wrong because of the October 13, 2016 extension and October 15, 2016 payment.

88. Therefore, on November 22, 2016, Santander did not have a present right to possess Plaintiff's vehicle.

89. Therefore, Santander engaged in unfair or deceptive acts or practices as defined by 73 P.S. § 2270.4 in violation of the FCEUA by attempting to seize the Plaintiff's vehicle when there was no present right to its possession;

90. This wrongful conduct damaged Plaintiff in that she suffered damage to her vehicle, infliction of emotional and psychological distress as well as humiliation in front of her neighbors and family friend.

91. According to 73 P.S. § 2270.5, a violation of the FCEUA is a violation of the Unfair Trade Practices and Consumer Protection Law (UTPCL) 73 P.S. § 201 *et seq*.

92. The UTCPL provides at 73 P.S. § 201-9.2 that a Plaintiff may seek treble damages, costs and reasonable attorney fees.

WHEREFORE Plaintiff requests for judgment against Santander awarding treble damages, costs and reasonable attorney fees.

14

<u>**COUNT VI**</u>
<u>**Violation of the Pennsylvania Fair Credit Extension Uniformity Act**</u>
<u>**(FCEUA) 73 P.S. § 2270.1 *et seq.* by Del Mar, United Towing, Jay John-**</u>
<u>**son and Blair Johnson**</u>

93. Plaintiff incorporates the preceding paragraphs by reference as if fully rewrit-
    ten herein.

94. At all relevant times, Defendants Del Mar, United Towing, Blair and Jay were
    Debt Collectors as defined by 73 P.S. § 2270.3(1).

95. Defendants engaged in unfair or deceptive acts or practices as defined by 73
    P.S. § 2270.4 in violation of the FCEUA as follows:

    a. Violating the Fair Debt Collection Practices Act

    b. Breaching the peace while attempting to repossess Plaintiff's vehicle;

    c. Claiming a right to seize the vehicle despite Plaintiff's objections;

    d. Attempting to seize the vehicle when there was no present right to its
       possession;

96. This wrongful conduct damaged Plaintiff in that she suffered damage to her
    vehicle, infliction of emotional and psychological distress as well as humilia-
    tion in front of her neighbors and friend(s).

97. According to 73 P.S. § 2270.5, a violation of the FCEUA is a violation of the
    Unfair Trade Practices and Consumer Protection Law (UTPCL) 73 P.S. § 201
    *et seq.*

98. The UTCPL provides at 73 P.S. § 201-9.2 that a Plaintiff may seek treble dam-
    ages, costs and reasonable attorney fees.

WHEREFORE Plaintiff requests for judgment against Del Mar, United Towing,

Blair Johnson and Jay Johnson, holding them jointly and severally liable, awarding treble

damages, costs and reasonable attorney fees.

## COUNT VII
## Assault and Battery by Blair Johnson

99. Plaintiff incorporates the preceding paragraphs by reference as if fully rewritten herein.

100. When Blair pushed Baynes out of the way in order to gain access to her vehicle, it was his intention to push her.

101. When Blair raised his hand to push Baynes, she was put in immediate apprehension that he was going to make harmful or offensive contact with her as she had not given him permission to touch her.

102. Pushing a person without consent, implied or actual, is harmful or offensive contact.

103. Blair did indeed push Ms. Baynes, making harmful or offensive contact with her without her consent.

104. Blair conduct was motivated because he wanted to seize Plaintiff's vehicle, although he knew that repossessions should only be done without any breach of the peace but intentionally disregarded doing what is right and proper, and was indifferent to Plaintiff's rights.

105. Alternatively, Blair's conduct was reckless, malicious and wanton.

106. Therefore, Blair's conduct justifies the award for punitive damages, a claim for which is hereby made.

107. Blair was an agent of Del Mar, United Towing and Santander when he was acting

WHEREFORE Plaintiff requests for judgment against Del Mar, United Towing,

Santander and Blair Johnson, individually and jointly, awarding compensatory damages, punitive damages, costs and any other award the allowable by law.

<u>COUNT VIII</u><br>
<u>Trespass by Blair Johnson and Jay Johnson</u>

108. Plaintiff incorporates the preceding paragraphs by reference as if fully rewritten herein.

109. By refusing to leave Plaintiff's property, then subsequently attempting to wrongfully repossess her vehicle, Defendants Blair and Jay interfered with Plaintiff's right to peaceably enjoy full, exclusive use of her property.

110. Defendants Blair and Jay acted with malice and reckless indifference to Plaintiff's rights as follows:

   a. Blair pushed Plaintiff to gain access to the garage.

   b. Blair and Jay attempted to take the car surreptitiously while the police officers were in the house with Plaintiff and her husband.

   c. Blair and Jay pushed the car out of the garage even though it was partially blocked in by another vehicle and there was a high risk of damage to any of the two vehicles.

111. Because Blair and Jay acted with malice and reckless indifference to Plaintiff's right, Plaintiff is entitled to punitive damages, a claim for which is hereby made.

112. At all relevant time, Blair and Jay were acting as agents of Santander, Del Mar and United Towing.

WHEREFORE Plaintiff requests for judgment against Del Mar, United Towing, Santander, Blair Johnson and Jay Johnson, individually and jointly, awarding compensa-

tory damages, punitive damages, costs and any other award allowable by law.

**COUNT IX**
**Negligence by Santander and Del Mar**

113. Plaintiff incorporates the preceding paragraphs by reference as if fully rewritten herein.

114. Santander owed a duty to Plaintiff, as its consumer and customer, to keep proper business records of Plaintiffs account.

115. Santander and Del Mar respectively also owed a non-delegable duty to Plaintiff to ensure that any non-judicial repossession undertaken on their behalf against Plaintiff is effectuated without violence to her person, property damage, or any other breach of the peace. To fulfill this non-delegable duty, they each had a duty to exercise reasonable care in the hiring and use of repossession agencies and agents.

116. Santander also breached that duty as it did not keep proper business records of Plaintiffs account, as its representative, Ross, indicated that there was no record of the extension Plaintiff signed in October 2016 or the payment she made shortly thereafter.

117. This breach was the direct and proximate cause of the attempted repossession of Plaintiff's vehicle and the relevant events that transpired on November 22, 2016.

118. Santander and Del Mar breached their duty in their hiring and use of repossession agencies and agents as follows:

　　　　a. They knew or should have known by performing a reasonable background check, that Jay Johnson had a history of crimes involv-

18

ing violence or threat of violence. For example, on 8/23/2013, he was convicted of making Terroristic Threats w/ intent to Terrorize Another; on 10/14/2014, he pled guilty to Intimidation of witnesses or victims.

119. If either Santander or Del Mar performed a reasonable background check before using United Towing and its agents or requested from one from United Towing, they would have seen the aforementioned criminal history, making the decision to go ahead to use Defendant Jay a reckless indifference to Plaintiff's right, therefore entitling Plaintiff to punitive damages, a claim for which is made herein.

120. Alternatively, if Santander, through Del Mar, did not perform a reasonable background check or ask for one before utilizing United Towing and its agents, it is a reckless indifference to Plaintiff's rights as it is aware of the potentially dangerous nature of non-judicial possessions. This conduct entitles the Plaintiff to punitive damages, a claim for which is made herein.

121. Plaintiff suffered damages as stated in the foregoing paragraphs as a result of the conduct of Santander and Del Mar.

WHEREFORE Plaintiff requests for judgment against Santander and Del Mar, individually and jointly, awarding compensatory damages, punitive damages, costs and any other award the allowable by law.

## **JURY TRIAL DEMAND**

Plaintiff hereby makes a demand for a trial by jury on all triable issues.

Date: October 20, 2017                    Respectfully submitted,

                                          /s/ Olanrewaju Kukoyi
                                          Lanre Kukoyi, Esq.
                                          PA I.D. # 315955
                                          Kukoyi Law Firm, LLC
                                          510 Washington Ave, Flr. 3
                                          Carnegie, PA 15106
                                          Voice (412) 725-7701
                                          Facsimile (412) 502-5105
                                          Mobile (412) 725-7701
                                          kukoyi@kukoyilaw.com