IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| HELEN BAYNES, | ) |
| | ) |
| Plaintiff, | ) Civil Action No. 17-1369 |
| | ) Chief Magistrate Judge Maureen P. Kelly |
| v. | ) |
| | ) |
| SANTANDER CONSUMER USA, DEL | ) |
| MAR RECOVERY SOLUTIONS, DOUG | ) ECF Nos. 7, 25 and 30 |
| YUHOUSE, MICHELE KREMPASKY, | ) |
| WILKINSBURG POLICE DEPARTMENT, | ) |
| UNITED TOWING SERVICE LLC *also* | ) |
| *known as* UNITED TOWING, BLAIR | ) |
| JOHNSON, and JAY JOHNSON, | ) |
| | ) |
| Defendants. | ) |

## OPINION AND ORDER

**KELLY, Chief Magistrate Judge**[1]

Helen Baynes ("Plaintiff" or "Baynes") filed this action for damages and injuries allegedly sustained in the course of the repossession of her automobile. Defendants Santander Consumer USA ("Santander"); Del Mar Recovery Solutions ("DMRS"), United Towing Service, LLC, aka United Towing, with its agents or employees Jay Johnson and Blair Johnson (collectively, the "Repossessing Defendants"), move to compel the arbitration of the claims asserted against each of them or, in the alternative, to dismiss Plaintiff's Complaint. ECF Nos. 25, 30. Defendants Wilkinsburg Police Department, Doug Yuhouse and Michele Krempasky (collectively, the "Wilkinsburg Police Defendants"), also seek dismissal of Plaintiff's Complaint against each of them for failure to state a claim upon which relief may be granted. ECF No. 7.

---

[1] In accordance with the provisions of 28 U.S.C. § 636(c)(1), the parties voluntarily consented to having a United States Magistrate Judge conduct proceedings in this case, including the entry of a final judgment. ECF Nos. 35, 37, and 39.

1

The Court has reviewed Plaintiff's Complaint, as well as the pending motions, briefs and exhibits filed in support and in opposition to the three pending motions. ECF Nos. 1, 7, 8, 25, 26, 28, 30, 31, 32, 36, 39, 41, 42, 45 and 46. For the reasons that follow, the Motions to Compel Arbitration, ECF Nos. 25 and 30, will be granted. Accordingly, this action will be stayed and administratively closed pending the resolution of all of the claims subject to arbitration. The Motion to Dismiss filed by the Wilkinsburg Police Defendants will be denied without prejudice, and the claims against them are stayed pending the resolution of all of the claims subject to arbitration. The parties may move to lift the stay and reopen the case in the event that further judicial proceedings are required.

## I. FACTUAL BACKGROUND

In conjunction with the purchase of a 2010 Hyundai Genesis, Plaintiff entered into a Loan Installment Contract with Santander's predecessor in interest, requiring monthly payments in the amount of $583.86. ECF No. 1 ¶ 20. Plaintiff alleges that on or about October 13, 2016, upon failing to make certain payments, she entered into an Extension Agreement with Santander to refinance and extend her loan obligation. Id. ¶ 24. Plaintiff alleges she made an initial payment under this agreement on or about October 15, 2016, in the amount of $594.81. Id. ¶ 25.

On November 22, 2016, Defendant United Towing, through its agents and/or employees Blair Johnson and Jay Johnson, arrived at Plaintiff's residence to repossesses her car, backed a tow truck into her driveway, and entered her unlocked and open attached garage. Id. ¶¶ 26-28. Plaintiff requested that the men leave her garage and property but the men did not respond. Id. ¶ 29. Plaintiff attempted to stop the repossession by blocking Defendants' path. Plaintiff alleges that Blair Johnson pushed her out of the way by placing a hand on her chest and throat. Id. ¶ 30-32. This led to a shoving match between Plaintiff's husband and Blair Johnson. Id. ¶¶ 32-34.

2

During this physical altercation, Plaintiff contacted a Santander representative by telephone. Id. ¶ 35. The representative explained that the vehicle was being repossessed because she was two or three months in arrears. Plaintiff informed the representative that she had entered into an Extension Agreement and her payments were up to date. The representative indicated he would contact the agents to cancel the repossession in progress. Id. ¶¶ 37-38.

In the interim, Wilkinsburg Police Officers Dough Yulhouse and Michele Krempasky arrived. Plaintiff alleges that despite informing the officers that she was assaulted in the course of the repossession and was otherwise current in all payments, the officers aided Defendants Jay Johnson and Blair Johnson by permitting them to take possession of the vehicle. Plaintiff alleges that Officer Yuhouse accused Plaintiff of assaulting Blair Johnson. Id. ¶¶ 39-40, 44.

The two United Towing agents then pushed Plaintiff's vehicle out of the garage, striking a pick-up truck parked in the driveway, and causing damage to Plaintiff's car. Id. ¶ 46. At this point, Santander's agent contacted Jay Johnson to cancel the repossession. Id. ¶ 49. Plaintiff alleges that as a result of this episode, which was witnessed by neighbors, she has suffered significant emotional distress, embarrassment and humiliation. Id. ¶ 51

Plaintiff alleges that because the October 13, 2016, signed agreement could not be located after the incident, Santander sent Plaintiff a second Extension Agreement for execution. Id. ¶ 50. Plaintiff executed the second agreement on November 25, 2016.

## II.    PROCEDURAL HISTORY

Plaintiff filed this action, alleging in pertinent part, claims against all Defendants pursuant to 42 U.S.C. § 1983 for the violation of her Fourth and Fourteenth Amendment rights (Count I). In addition, as to Defendants Blair Johnson and Jay Johnson, Plaintiff alleges state law claims for "Breach of the Peace" (Count II), Assault (Count VII) (as to Blair Johnson only), and

3

Trespass (Count VIII). As to Del Mar, United Towing, Blair Johnson and Jay Johnson, Plaintiff alleges violations of the Fair Debt Collections Practices Act, 15 U.S.C. § 1692 (Count III), and the Pennsylvania Fair Credit Extension Uniformity Act, 73 P.S. § 2270.1 (Count VI). As to Santander, Plaintiff alleges violations of the Uniform Commercial Code (Count IV) and the Pennsylvania Fair Credit Extension Uniformity Act (Count V). Finally, as to both Santander and Del Mar, Plaintiff asserts a state law negligence claim (Count IX). ECF No. 1.

Santander and the Repossessing Defendants responded to Plaintiff's Complaint with the pending Motions to Compel Arbitration or, in the Alternative, to Dismiss Plaintiff's Complaint, asserting that Plaintiff is bound by the terms of an arbitration agreement that was incorporated into the November 2016 Extension Agreement. ECF Nos. 25 and 30. Plaintiff contends the October 2016 Extension Agreement controls this matter, but concedes that the arbitration agreement is valid. ECF No. 39 at 1.

Both the October and November 2016 versions of the Extension Agreement contain the following identical language:

> **ARBITRATION.** As additional consideration for [Santander Consumer USA Inc.] SCUSA's agreement to forebear from exercising its remedies under the Contract, you and SCUSA agree that upon written request by either party that is submitted according to the rules for arbitration, any Claim, except those specified below, shall be resolved by binding arbitration in accordance with (i) the Federal Arbitration Act, (ii) the Rules of the chosen Administrator, and (iii) this Arbitration Provision.
>
> (a) Claims Covered. "Claim" means any claim, dispute, or controversy now or hereafter existing between you and SCUSA, including without limitation, any claims arising out of, in connection with, or relating to the Contract, any modification, deferment, extension, application, or inquiry of credit or forbearance of payment; .... the closing, servicing, collecting or enforcing of the Contract; whether the claim or dispute must be arbitrated; the validity of this Agreement; .... any claim or dispute based on all allegation of fraud or misrepresentation, including without limitation, fraud in the inducement of this or any other agreement; any claim or dispute based on state or federal law, or an alleged tort. You and SCUSA also agree to submit to final, binding arbitration, any claim or dispute that you or SCUSA has against all person and/or entities (i) who are involved with the Contract; (ii) who signed or executed any

4

document relating to the Contract or any Claim, and (iii) who may be jointly or severally liable to either you or SCUSA regarding any claim.

EXCLUSION FROM ARBITRATION. The following types of matters will not be arbitrated:

- The exercise of extra-judicial or self-help repossession under applicable law or any action seeking to enforce a security interest or any action to effect the sale or transfer of the property being foreclosed (collectively "Excluded Actions"). However, any claim or dispute arising out of or relating to the exercise of such Excluded Actions is subject to arbitration in accordance with this Agreement; ...

(b) <u>Commencing Arbitration</u>. The party initiating arbitration must choose one of the following arbitration Administrators and follow the rules and procedures that govern disputes established by the chosen Administrator ("Rules"): (1) American Arbitration Association ... or (2) National Arbitration Forum. The Rules and form of demand for arbitration are available from each Administrator. SCUSA or you may bring an action, including a summary or expedited proceeding, to compel arbitration of any Claim, and/or to stay the litigation of any Claim pending arbitration, in any court having jurisdiction....

(e) <u>Governing Law</u>. The Federal Arbitration Act, 9 U.S.C. §§ 1 et seq.. shall govern this arbitration provision. The arbitrator shall make his or her decision in accordance with applicable substantive law consistent with the Federal Arbitration Act and applicable statutes of limitations, and shall be empowered to award any damages or other relief provided for under applicable law. Judgment upon any arbitration award may be entered in any court having jurisdiction.

**Special Acknowledgments. You understand (1) the Vehicle and other goods, products and services related to the contract, as well as the funding for your credit transaction, come in whole or in part from sources outside this state, which constitute interstate commerce within the meaning of the Federal Arbitration Act, and (ii) a court or jury will not hear or decide any Claim governed by this Agreement. You further acknowledge that you have been informed of the consequences of failing to make the first or future extended installment payments in a timely manner under this Agreement.**

ECF Nos. 26-3; 39 at 6.

Both versions of the Extension Agreement also provide for the release of claims as

follows:

In consideration of SCUSA's agreement to forbear from exercising its remedies under the Contract by reason of your default in failing to pay as agreed, you hereby release and hold harmless SCUSA, its affiliates, and respective officers,

5

> directors, employees, agents, successors , and assigns, from any and all claims, actions, and causes of action arising out of or in any way connected with the contract, or SCUSA's servicing of the Contract, from the date of the Contract through the date of this Agreement.

Id.

Plaintiff concedes that she entered into a "valid" agreement to arbitrate and does not dispute the apparent breadth and scope of the agreement as including all claims asserted by her against Santander. Instead, Plaintiff argues that the agreement is unenforceable because the designated arbitrators are "unavailable" to preside over this consumer debt action. ECF No. 39 at 2-3. Plaintiff contends that a moratorium was issued by the American Arbitration Association ("AAA") in 2009, precluding its participation in consumer debt collection cases, including this matter.[2] Because the Santander Extension Agreement includes a provision making participation of either AAA or National Arbitration Forum ("NAF") mandatory, Plaintiff asserts that the arbitration agreement is unenforceable due to the unavailability of either entity.

Plaintiff further argues that in the event the Court agrees that the arbitration agreement unenforceable, Defendants may not obtain alternative relief by resort to the terms of a release provision contained in the November 25, 2016, Extension Agreement. First, Plaintiff contends that she did not provide additional consideration to release claims arising after October 13, 2016, and as such, the release is not valid as to the claims asserted in her Complaint. Second, she argues that at the time she signed the November 25, 2016, Extension Agreement, she believed she was executing an agreement identical in all respects to the October 13, 2016, Extension Agreement and, therefore, only claims included within the October 13, 2016, Extension Agreement have been released. Id. at 3-4.

---

[2] The parties do not dispute NAF's unavailability.

## III. STANDARD OF REVIEW

The Federal Arbitration Act ("FAA") provides that arbitration agreements involving commercial transactions shall be "valid, irrevocable, and enforceable" unless grounds exist "at law or in equity" to revoke the agreement. 9 U.S.C. § 2. The United States Supreme Court has held that the FAA's provisions reflect a "liberal federal policy favoring arbitration." AT&T Mobile, LLC v. Concepcion, 563 U.S. 333, 338 (2011). Accordingly, the FAA provides that "[a] party aggrieved by the alleged failure, neglect, or refusal of another to arbitrate under a written agreement for arbitration may petition any United States District Court ... for an Order directing that such arbitration proceed in the manner provided in the agreement." 9 U.S.C. § 4.

Because "arbitration is a matter of contract ... [and is] predicated upon the parties' consent," a court ruling on a motion to compel under § 4 must first determine if the parties intended to arbitrate the dispute. Guidotti v. Legal Helpers Debt Resolution, L.L.C., 716 F.3d 764, 771 (3d Cir. 2013) (citations and alterations omitted). When "it is apparent, based on 'the face of a complaint, and documents relied upon in the complaint,' that certain of a party's claims 'are subject to an enforceable arbitration clause, a motion to compel arbitration should be considered under a Rule 12(b)(6) standard without discovery's delay.'" Id. at 776. "But if the complaint and its supporting documents are unclear regarding the agreement to arbitrate, or if the plaintiff has responded to a motion to compel arbitration with additional facts sufficient to place the agreement to arbitrate in issue, then 'the parties should be entitled to discovery on the question of arbitrability before the court entertains further briefing on [the] question.'" Id. quoting Somerset Consulting, LLC v. United Capital Lenders, LLC, 832 F. Supp.2d 474, 482 (E.D. Pa. 2011).

7

In this instance, Plaintiff "concedes that a valid arbitration agreement exists," and does not contest whether the claims at issue are within the scope of the agreement. ECF No. 39 at 2. Accordingly, the Rule 12(b)(6) standard is appropriate, and the Court will look to the Complaint and the supporting contract documents to determine the arbitrability of this matter.[3]

## IV. DISCUSSION

### A. Santander's Motion to Compel Arbitration

Santander contends that all claims asserted against it by Plaintiff are subject to arbitration. ECF Nos. 25, 26. As indicated, Plaintiff does not contest the scope of issues subject to arbitration, but disputes the enforceability of the agreement to arbitrate solely on the basis of the purported unavailability of the designated arbitrators.

Ordinarily, once it is determined that the parties have entered into a valid arbitration agreement, the only remaining question is whether the claims asserted fall within the scope of the agreement. CardioNet, Inc. v. Cigna Health Corp., 751 F.3d 165, 172 (3d Cir. 2014). "Until a court determines whether arbitration should be compelled, ... judicial review is limited to two threshold questions: '(1) Did the parties seeking or resisting arbitration enter into a valid arbitration agreement? (2) Does the dispute between those parties fall with the language of the arbitration agreement?'" Id. quoting John Hancock Mut. Life Ins. Co. v. Olick, 151 F.3d 132, 137 (3d Cir. 1998).

Given Plaintiff's concession as to the validity of the agreement to arbitrate, the Court looks to the language of the arbitration agreement to determine if the dispute regarding enforceability is subject to arbitration. Again, it is worth noting that Plaintiff does not challenge the breadth of the provision as including "any claim, dispute, or controversy now or hereafter

---
[3] In light of the ruling of the Court, it is not necessary to address the standard of review for consideration of the motions to dismiss for failure to state a claim upon which relief can be granted.

8

existing between you and SCUSA...." ECF No. 26-3 at 3. In addition, the agreement to arbitrate specifically includes disputes regarding "whether the claim or dispute must be arbitrated." Id. Under the express language of the agreement, Plaintiff's challenge as to enforceability also is subject to arbitration.

To the extent any issue remains as to the existence of a valid agreement, the Court notes that as indicated by the AAA, the moratorium that Plaintiff references applies to specific instances not at issue here:

> Notice on Consumer Debt Collection Arbitrations
>
> On October 19, 2010, the National Task Force on the Arbitration of Consumer Debt Collection Disputes released the Consumer Debt Collection Due Process Protocol Statement of Principles. That Protocol sets forth a number of important principles that need to be addressed and incorporated into consumer debt collection arbitration programs to help ensure that a fair and adequate arbitration process is made available to the parties.
>
> However, the AAA's previously announced moratorium on debt collection arbitrations remains in effect. That moratorium was instituted based on public discourse and an evaluation of the AAA's own experiences. **Matters included in this moratorium are: consumer debt collection programs or bulk filings and individual case filings *in which the company is the filing party* and the consumer has not agreed to arbitrate at the time of the dispute, and the case involves a credit card bill, a telecom bill or a consumer finance matter.**
>
> The AAA will continue to administer all demands for arbitration filed by consumers against businesses as well as all other types of consumer arbitrations.

https://www.adr.org/sites/default/files/document_repository/Notice%20on%20Consumer%20Debt%20Collection%20Arbitrations%20(1).pdf (emphasis and italics added).

Santander correctly indicates that this action is not one initiated by "the company" pursuant to a "debt collection program," but rather is an action filed **by Plaintiff** for the alleged violation of her civil rights, assault, trespass, and state and federal credit statutes. Further, AAA's moratorium indicates that the organization remains available for "all other types of

9

consumer arbitrations." ECF No. 42 at 3-4. The plain language quoted above indicates that the moratorium has no application outside large scale debt collection "programs", typically occurring in the credit card arena. This interpretation is bolstered by the stated intent behind AAA's decision. See, Black v. J.P. Morgan Chase & Co., 2011 WL 3940236 at * 9 (W.D. Pa. Aug. 25, 2011) ("this construction is in line with AAA's concerns, in implementing the moratorium, with ensuring a fair and adequate arbitration process for *consumer debt collection* arbitration programs. The Court's construction of the moratorium is also logical given the AAA's repeated reference to *debt collection* arbitrations throughout the Notice, and the fact that debt collections are normally brought by the company/lender against the consumer. None of these concerns are implicated here, where Plaintiff's dispute ... [involves alleged conspiracy and antitrust claims against lenders and credit reporting agencies regarding the availability of consumer loans].").

Plaintiff directs the Court's attention to a AAA News Release, dated July 23, 2009, which confirms that the moratorium was directed at *company-filed* "debt collection programs," due in part to concerns with consumer notification. ECF No. 39 at 10. Plaintiff also appends AAA's "practice areas" notification, which indicates that while AAA will not administer consumer debt collection arbitrations, it will continue to administer consumer disputes brought pursuant to consumer arbitration clauses that have been reviewed by the AAA and determined to substantially and materially comply with the due process standards of the AAA Consumer Due Process Protocol. Such clauses are listed on the AAA Consumer Clause Registry, and the Court directs the parties' attention to the Registry, which includes the Santander form agreement at issue here. See, ECF No. 39 at 13;

https://www.adr.org/simplefileandpay/faces/oracle/webcenter/portalapp/pages/clauseRegistry.jsp

x?_adf.ctrl-state=owb8kshgp_4&_afrLoop=1328508246468394&_afrWindowMode=0&_afrWindowId=owb8kshgp_1#! ; and see

https://www.adr.org/simplefileandpay/docopenservlet?_afrLoop=1328596111285523

Should AAA determine it is unavailable to administer an arbitration of this action based upon the moratorium, either party may file an appropriate motion for relief from stay with this Court and seek to litigate all pending claims.[4]

Accordingly, Santander's Motion to Compel Arbitration is Granted.

### B. DMRS/United Towing/Johnson Motion to Compel Arbitration

The Repossessing Defendants concede they are not parties to the arbitration agreement set forth in the executed November 2016 Extension Agreement. However, they seek to compel arbitration of Plaintiff's claims, relying upon the express language of the agreement and its inclusion of claims arising out of the enforcement of the contract:

> You and SCUSA also agree to submit to final, binding arbitration, any claim or dispute that you or SCUSA has against all persons and/or entities (i) who are involved with the Contract, (ii) who signed or executed any document relating to the Contract or any Claim, and (iii) who may be jointly or severally liable to either you or SCUSA regarding any claim.

ECF Nos. 26-3 at 3; ECF Nos. 30, 31 at 5. The Repossessing Defendants assert (i) they were "involved" with the enforcing the Santander extension agreement; (ii) they executed contract "documents" related to the extension agreement; and, (iii) they may be jointly or severally liable to Plaintiff regarding the claims asserted against them, arising out of their delegated enforcement

---

[4] As indicated by the AAA's Consumer Arbitration Fact Sheet, "[t]he AAA will accept a case for administration only after the AAA reviews the parties' arbitration agreement and if the AAA determines that the agreement substantially and materially complies with the due process standards of the Rules and the Consumer Due Process Protocol. If the AAA declines to administer a consumer arbitration, either party may submit the dispute to an appropriate court for resolution." http://info.adr.org/consumer-arbitration/

11

of the extension agreement. Id. Plaintiff, through her brief in opposition to the Motion to Compel Arbitration, agrees that her claims against the Repossessing Defendants are encompassed within the mandatory arbitration provision, if otherwise valid. ECF No. 45 at 2. Plaintiff's concession is in keeping with applicable law. "Pennsylvania law has held that non-signatories to an arbitration agreement can enforce the agreement when there is an 'obvious and close nexus' between the non-signatories and the contract or the contracting parties." Provenzano v. Ohio Valley General Hospital, 121 A.3d 1085, 1097 (Pa. Super. 2015); and see Saltzman v. Thomas Jefferson University Hospitals, Inc., 166 A.3d 465, 469 (Pa. Super. 2017). An "obvious and close nexus" between the non-signatories and the contract or the contracting parties "arises from the relationship between a signatory principal and a non-signatory agent; if the principal is bound by an arbitration agreement, its agents, employees and representatives are generally likewise bound and can enforce the arbitration agreement, event as non-signatories to the agreement." Provenzano, 121 A.3d at 1097, citing Pritzker v. Merrill Lynch, Pierce, Fenner & Smith, Inc., 7 F.3d 1110 (3d Cir. 1993 (agent was subject to contractual arbitration provision to which principal was bound ... "Where the parties to such a clause unmistakably intend to arbitrate all controversies which might arise between them, their agreement should be applied to claims against agents or entities related to the signatories.").

Plaintiff alleges that each of the Repossessing Defendants is an agent of Santander, and was otherwise acting on its behalf and within its control in utilizing self-help to enforce the provisions of the extension agreement. ECF No. 1 ¶¶ 14-17. As alleged, Plaintiff's claims arose out of the Repossessing Defendants enforcement of Santander's rights under the contract, and on its behalf. This is a sufficiently "obvious and close nexus" between the Repossessing

Defendants and the extension agreement, and between the Repossessing Defendants and each of the contracting parties, to permit their enforcement of the arbitration agreement.

Accordingly, because the Court has determined that the Arbitration Agreement is otherwise valid, the Motion to Compel Arbitration filed on behalf of the Repossessing Defendants is granted.

## C. Alternative Grounds for Relief

Santander and the Repossessing Defendants raise alternative grounds for relief predicated upon the terms of the release language contained in the executed November 2016 agreement; the limited reach of 42 U.S.C. § 1983 claims to private action claims; the exclusivity of remedies under the Uniform Commercial Code; and the absence of a recognized claim for "breach of the peace."

Plaintiff disputes the enforceability of the release agreement based upon, *inter alia*, Santander's alleged lack of good faith in obtaining her signature on the November 2016 Extension Agreement, without first disclosing that it contained a broad release of all claims. As to the remaining grounds in favor of dismissal, Plaintiff asserts she has set forth valid claims against all Defendants.

Plaintiff does not address whether any issue raised by Santander or the Repossessing Defendants falls outside of the wide scope of issues subject to the arbitration clause, which she has otherwise conceded is valid. As indicated, the clause specifically subjects to arbitration "any claim, dispute, or controversy now or hereafter existing between you and SCUSA including …. any claim or dispute based on all allegation of fraud or misrepresentation, including without limitation, fraud in the inducement of this or any other agreement."

As explained in Gay v. CreditInform, 511 F.3d 369, 386–87 (3d Cir. 2007):

> "Under the FAA the district court must be satisfied that the parties entered into a valid arbitration agreement. In conducting this inquiry the district court decides only whether there was an agreement to arbitrate, and if so, whether the agreement is valid. In so deciding, the district court is not to consider the merits of the claims giving rise to the controversy, but is only to determine, as we have stated, whether there is a valid agreement to arbitrate. Once such an agreement is found, the merits of the controversy are left for disposition to the arbitrator." [Great W. Mortgage Corp. v. Peacock, 110 F.3d 222, 228 (3d Cir.1997)]

In the absence of argument by Plaintiff disputing the scope of the arbitration clause, the record before the Court demonstrates that Santander and the Repossessing Defendants are entitled to enforcement of the arbitration clause with respect to all claims and defenses asserted, including the applicability of the November 2016 release agreement to Plaintiff's claims.

### D. Wilkinsburg Police Defendants' Motion to Dismiss for Failure to State a Claim

In light of this Court's rulings granting the Motions to Compel Arbitration and resulting stay of this matter, the Court need not address the Motion to Dismiss for Failure to State a Claim of the Wilkinsburg Police Defendants, ECF No. 7, at this time. For the reasons set forth herein, and in the interests of judicial efficiency, this Motion to Dismiss is denied without prejudice and may be refiled if the stay is lifted and the case reopened following the conclusion of the arbitration proceedings.

### V. CONCLUSION

For the reasons set forth above, the Court concludes that the arbitration clause set forth in the executed Extension Agreement dated November 25, 2016, is valid and enforceable as to Defendants Santander and the Repossessing Defendants. Plaintiff does not dispute whether her claims fall within the broad scope of the arbitration clause, and the moving Defendants do not contend that they are excluded by terms of the agreement. Therefore, the Motion to Compel Arbitration filed on behalf of Santander and the Repossessing Defendants will be granted and the

alternative Motions to Dismiss the Complaint will be denied as moot. This action will be administratively closed, subject to being reopened and restored to the Court's docket in the event further judicial proceedings are required. An appropriate Order follows.

**ORDER**

AND NOW, this 29th day of January 2018, upon consideration of the motions pending before the Court, it is hereby ordered as follows:

(1) Defendant Santander Consumer USA's Motion to Compel Arbitration or, in the alternative, Motion to Dismiss the Complaint as a Matter of Law, ECF No. 25, is GRANTED IN PART, and Plaintiff's claims against the Defendant shall promptly proceed to arbitration. The alternative Motion to Dismiss the Complaint is DENIED AS MOOT;

(2) Defendants Del Mar Recovery Solutions, United Towing Service, LLC, a/k/a United Towing, Blair Johnson and Jay Johnson's Motion to Compel Arbitration or Alternatively Motion to Dismiss, ECF No. 30, is GRANTED IN PART, and Plaintiff's claims against these Defendants shall promptly proceed to arbitration. The alternative Motion to Dismiss the Complaint is DENIED AS MOOT;

(3) Pending the completion of arbitration, the Motion to Dismiss filed on behalf of Defendants Wilkinsburg Police Department, Doug Yuhouse, and Michele Krempasky, ECF No. 7, is DENIED without prejudice;

(4) The Clerk shall administratively close this action, subject to being reopened and restored in the event further judicial proceedings are required.

BY THE COURT:

*Maureen P. Kelly*
MAUREEN P. KELLY
CHIEF UNITED STATES MAGISTRATE JUDGE

cc: All counsel of record via CM/ECF